Pearson, C. J.
 

 The case turns on the construction of the Statute, Eev. Code, ch. 7-, secs. 27 and 28, title “Attachment;”
 
 *5
 
 and the question is within what time must the attachment be issued ?
 

 No time is expressed in the Statute, and several constructions were contended for on the argument, for the purpose of fixing the time:
 

 1. The time is unlimited and the lien continues, and the attachment may be issued at any time after the work is done, or the provisions furnished — or at least until there be a presumption of payment, to wit, ten years ; or the claim is barred by the statute of limitations applicable to the action of assumpsit, to wit, three years.
 

 2. The attachment may be issued within a reasonable time, to be judged of by court, according to circumstances.
 

 3. The lien is
 
 in
 
 presentí, and the attachment must be issued before the vessel leaves the port, or the place, where the work is done.
 

 4. The attachment must be issued before the vessel leaves the State and goes out of the jurisdiction of its courts, or at all events if the vessel goes out of the jurisdiction and passes into the hands of a purchaser for valuable consideration, the lien is gone and the attachment cannot rightfully issue, should the vessel happen to return to the State.
 

 The first construction leads so manifestly to an absurdity and to injustice, that it cannot be entertained. Suppose a vessel is repaired in Wilmington and goes to Newbern, where provisions are furnished; then to Washington, where she is again repaired; and so continuing from time to time, and at different places to be repaired, furnished, equipped and stored, until she is covered over with liens, as numerous' as the barnacles on her bottom. The Statute does not make the priority of lien depend on the priority of suing out the attachment, but provides, '“sueh debts shall have a lien on the ship, &c., and shall
 
 bq preferred to all other liens
 
 thereon, except mariners wages.” Can each and everyone of these different liens be preferred to all other liens ? the first to all the others ? the last to all the others
 
 %
 
 and the intermediate ones to all the others 2111 Or, suppose the vessel be encumbered with liens, is
 
 *6
 
 gold to, a purchaser for valuable consideration, so- as to
 
 give
 
 him, not a mere lien, but the absolute ownership, does he take-, subject to all of I líese liens, in regard t© the existence of which no means of information are afforded to him ? This would be manifestly unjust, and yet it must be so, if the liens continue*, and can be enforced by attachment at any indefinite time; for it is decided that a third person cannot interplead, oh the ground that in a proceeding under the statute the creditor has a right to have his debt satisfied out of the vessel attached, lot -it belong to. whom it may;
 
 Brig ' Marcelkis,
 
 3 Jones’ Rep. &3. To meet this absurdity and injustice, the counsel admitted.that the statute was defective and ought to-be amended ; the failure to.fix a time being, as he supposed, an-oversight; but he insisted, that as the law now stands, the time-is indefinite. We certainly cannot adopt this construction, if there be any other, by which to escape from such gross absurdity and injustice; for we are not at liberty to adopt the suggestion of ail oversight, and suppose that the Legislature forgot to insert a provision in respect to time. Our duty is.to take the statute as it is, and to assume that it contains all that the law-makers intended.
 

 2. The remedy by attachment must be pursued within a
 
 reasonable lime.
 
 When the common law imposes an obligation, as for the holder of a bill to give notice,.or one contracts to do a thing, as to- execute a deed, and no time is fixed, the lawr implies that it must be done within a reasonable time ; but wm know' of no rule of construction, by which the words of a statute can be added to, and a time fixed by an implication of law1. The timé must be fixed by the words on the construction of the statute, and the implication of a reasonable time is inadmissible. So this suggestion is as untenable as that in respect to the ten years, or the three years as a statute of limitations; but if wm were at liberty to- interpolate, “such lien shall continue, provided the attachment be issued within reasonable timeit would not aid the attaching creditor in our case, because the facts are not set ou.t so as to,enable-the court to see that the attachment did issue in reasonable time. The
 
 *7
 
 work was done some time in the year 1857, and the attachment issued in May, 1858. Wo are inclined to think this was not in reasonable time, considering the circumstance that the vessel had gone out of the State.
 

 In this connection it may be well to dispose of the fourth suggestion that the lien ceases, and the attachment cannot be issued after the vessel has gone out of the jurisdiction of our courts, particularly, if she passes into the hands of a third person as a purchaser for valuable consideration. To this the same objections are applicable, as above pointed out in respect to reasonable time. The Statute contains no provision, and these words cannot be added by implication, however reasonable it may seem to be that such a clause should have been inserted. Consequently, either the time is unlimited, or it restricted to the present, i. e., when the work is done, or the articles are furnished ; so that if the vessel is allowed to leave the port or place, the lien and rght to attach cannot be after-wards resorted to.
 

 3. We are of opinion that the latter is the proper construction.
 

 Several considerations sustain this conclusion: If the lien must be enforced on the spot, that is, before the vessel leaves the port or place of repairs, &c., the absurdity and injustice, which form an inseparable objection to the other constructions are avoided ; for the provision, “such debt shall be preferred to all other liens, except Mariners wages,” is then sensible and is consistent with justice; because persons having a prior lien by mortgage, or hypothecation, are benefitted by having the vessel repaired or furnished, so as to enable her to proceed on the voyage, as well as the ultimate owners ; and the work may very properly be considered as done for the benefit of all who are concerned in her; in fact the very nature of a lien, “preferred to all other liens,” by necessary implication must be enforced
 
 instcmter.
 

 By comparing the statute of New-York, (Eevised Statutes of 1829, pt. 3, ch. 8, tit. 8, sec. 1,) with the statute under consideration, the first section is worded so precisely like the 27
 
 *8
 
 sec. of ours, as to show that the one was copied from the other. The second section of the statute of New York, restricts the lien to twelve days, where the vessel departs from the port ■of repairs to any other port of the State, and it is to cease ■when the vessel leaves the State. In place of this, the 28th section of our statute is substituted, giving the right to issue an attachment, and no restriction as to time, is inserted. It is true, that the statute of another State cannot be used in aid of the construction of ours, by adding to, or taking from , its words; but reference may be made to it for the sake of an inference ; and it is, obviously, a fair inference that the restriction in respect to time, was not omitted by an oversight, but because it was considered unnecessary; the necessity for it being superseded by the provision allowing an attachment; which follows, as a matter of course, provided the attachment was required to be issued on the spot, and is a
 
 non seqmtur
 
 •if the attachment could be issued at any future indefinite time.
 

 This construction is also sustained by a consideration of the ■object of the statute, and the mischief to be remedied. The words of the statute are, “ any ship, &c., within this State making no distinction between foreign and domestic vessels.
 
 In regard to the
 
 former, the persons making repairs, &c., had a lien on the vessel for a prescribed time according to the general Maritime law, and the object of the statute was to give this lien a preference over all other liens, except Mariners wages, and to give as a cumulative remedy the right to sue out an attachment against the vessel, which was a quick mode of proceeding in the courts of this State.
 
 In regard to the latter, or domestic
 
 vessels, which is our case, the general Maritime law had no application, “as to repairs, &c., in a port in the State to which the vessel belongs; the case is governed altogether by the local law of the State, and no lien is implied, unless to be recognized by that
 
 law;" The General Smith,
 
 4 Wheat, 438;
 
 Peyroux
 
 v.
 
 Howard,
 
 7 Peters, 341. The common law principle of lien, in favor of bailees, e. g., common carriers, inn-keepers, tailors, millers, &c., did not apply, for
 
 *9
 
 that is founded on a bailment, where the party has the thing in possession, and is allowed to retain it until the charges are paid; whereas, one who makes repairs on a vessel, or furnishes her with provisions, coal, &c., has not the thing in possession, and therefore had no lien according to the local law, and was forced to sue the owner or master, as for a personal debt. So, in regard to domestic vessels, the object of the statute took a wider scope than simply to make a lien which was already recognised by law, preferable to all other liens, and to give a summary remedy, the main purpose being in respect to domestic vessels to
 
 create a lien
 
 by the local law, by extending to such cases the principle of common law, in respect to property which is in possession by bailment; on the ground that one who furnishes provisions, or repairs a vessel, although not in possession, comes within the like reason, as an inn keeper, who feeds a horse, or a tailor who makes or mends a coat, and the remedy is to allow the vessel to be taken by attachment, so as to compel payment. So the question is narrowed to this: how far did the common doctrine, in respect to bailees, extend ? Eor there is no ground to assume that the Legislature intended to go beyond it. The extent of the common law doctrine is settled: such bailees have alien which is “preferred to all other liens,” but it must be enforced on the spot.
 
 Jones
 
 v.
 
 Thurloe,
 
 8 Mod. 172. “By the custom of the realm, if a man lie in an inn one night, the inn-keeper may detain his horse until he be paid for the expenses; but if he give him credit for that time and let him depart without payment, then he has waived the benefit of that custom by his own consent to the departure, and shall never afterwards detain the horse for that expense.” The law has been considered settled ever since; see Leigh’s Ni. Pri. sec. 1495, and other text books. So that the object of the statute, and the mischief to be remedied, which, according to a well established rule of construction is of great weight in fixing its meaning, (Dwarns on Statutes, 695) show the meaning to be to give a lien which is preferred
 
 to
 
 all other liens, with an exception in favor of Mariners wages, (which stands on peculiar grounds,) which
 
 *10
 
 kind of lien, from its nature implies that it shall be enforced
 
 instanter,
 
 consequently' the attachment must be issued so as to have the vessel seized before she is allowed to depart from the port or place of repairs.
 

 Tin's construction obviates all difficulty and complication in which the subject must otherwise be involved.
 

 The judgment in the Court below is reversed, and upon the case agreed the proceeding is dismissed.
 

 Pee Curiam,
 

 Judgment reversed.